THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. RAFAEL ROBERT RIPORT, Defendant and Appellant.

No. 9430. Argued July 15, 1942.—Decided July 30, 1942.

*Víctor J. Vidal González* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The District Attorney of San Juan filed two separate complaints against the defendant-appellant. In the first he was charged with unlawfully, wilfully, and maliciously keeping, on June 30, 1940, "in his possession and control a firearm, to wit, a Colt pistol, which had not been declared and registered," thus violating §7 of Act No. 14 of July 8, 1936 (Spec. Sess. Laws, p. 128); and in the second he was charged with the unlawful carrying of said pistol, in violation of §1 of Act No. 14 of June 25, 1924 (Laws of 1924, p. 114).

Having been convicted of both offenses and feeling aggrieved by the sentences of six months' and two months' imprisonment in jail, respectively, the defendant took the present appeal. In support thereof he urges that the court *a quo* erred in deciding against him the various questions raised by him at the trial, which, as he claims, constitute sufficient and valid defenses against both complaints.

■ Appellant argues that he did not violate the law regulating the registration of firearms, as the Colt pistol seized was not his property but that of José Nicolás Orsini, in whose name it was registered; that said pistol was accidentally in his possession and he was under no obligation whatsoever to have it registered in his own name.

The following facts were definitely established by the evidence introduced by both parties:

On June 30, 1940, defendant Rafael Robert was employed as pay clerk by the firm of Santos & Pérez, building contractors, and he was in charge of paying the salaries to the workmen, which the firm had employed, in three building projects in Jayuya. Mr. Santos, one of his employers, advised him that in order to insure the safety of the money carried by him every week out of town, he must obtain a

license to carry a weapon. Mr. Santos himself helped him in obtaining the license, which was granted to him on June 22, 1940. The defendant asked Santos to advance him the money with which to buy a revolver, but Santos postponed it for the following week. On the morning of June 29, before leaving for Jayuya with some $3,800 in cash to pay the workmen, and having already obtained a license to carry a revolver, the accused asked Nicolás Orsini, foreman of the firm, to lend him a pistol which he kept in the office. Orsini lent him the pistol for the day so that he could go and make the payments out of town, informing him that the pistol was registered in his name. Robert returned from Jayuya about ten o'clock that night and met José Torres Silva, another pay clerk of the firm Santos & Pérez in Terraza del Parque in Santurce. Both of them had money left from the payments they had made, which they kept, jointly with the pay roll books in a tin box and they went out together in order to deposit the surplus money in a safe which Mr. Santos had in the Anadale's Beach Club.

On reaching the Guarin Bar, located at Kilometer 7 of the Loíza Road, which leads to the Anadale's Beach Club, Robert and Torres, who had not dined yet, went in, sat at a table, and ordered some food. Five or six young men were drinking liquor at a nearby table and were apparently intoxicated. Robert got up and went to a radiola to deposit a coin in it whereupon one of the young men tried to prevent him from so doing and an argument arose between Robert and the young man. Then, as he noticed that the other young men were approaching him in an aggressive attitude, Robert made a move to pull out his gun, but did not make use of it. After the incident was closed, Robert and Torres returned to their table and the young men left the bar and went to notify the police. When policemen Nieves and Ortiz arrived, the defendant gave Nieves the pistol, telling him that he was a pay clerk of Santos & Pérez and showed

him the license which authorized him to carry a revolver. Policeman Nieves testified that the accused was not intoxicated when the weapon was taken from him, and that the young men that accused him were drunk. He also testified that Robert had in his possession a large sum of money.

The evidence for the prosecution established the fact that the pistol carried by the defendant was registered in the name of its owner, José Nicolás Orsini.

As a result of the incident which took place between said young men and the defendant, the latter was charged with the offense of aggravated assault and battery, of which charge he was acquitted.

The lower court made the following findings:

1. That defendant went to the Guarin Bar with the purpose of amusing himself; and that his presence there was not as pay clerk of "Santos & Pérez" but as an ordinary person.

2. That the municipal court had erred in acquitting the defendant of the charge of assault and battery, as it was not a case of self-defense.

3. That the defendant tried to fire his weapon, and did everything that was humanly possible to fire it, and that if no shot was fired and no killing occurred, this was due to causes beyond his control, as his gun had misfired.

4. That the penalty of one month in jail imposed by the municipal court was too lenient, and taking into consideration the circumstances under which the weapon was carried *and how that weapon was used,* the court would sentence him to two months in jail.

5. That, as the weapon was not registered in defendant's name, the burden was upon him to prove that there was an urgent need to carry the weapon and to establish to the satisfaction of the court that Orsini had lent him the weapon. That the court was not fully satisfied with the claim that

Orsini had loaned the weapon to the defendant, and that for this reason it adjuged him guilty of possessing an unregistered weapon and sentenced him to a term of six months in jail.

We think that the foregoing findings are not justified by the evidence and that they are contrary to law.

If the defendant was authorized to carry a weapon ''while in the discharge of the duties of his employment,'' that is, while carrying with him any sum of money belonging to his principal, and on the night of the occurrence he was carrying a weapon registered in the name of another person as its owner, who lent it to him for the discharge of his duties, was such carrying rendered unlawful by the mere fact that he stopped for dinner at a restaurant before returning the surplus money to his principal?

We do not think that the law should be applied so rigorously as to require that the bearer of large sums of money, who holds a license to carry a weapon for the protection thereof, should refrain from satisfying the physiological needs of eating and drinking while his mission is uncompleted under penalty of being converted, by that fact alone, into a transgressor. The evidence showed that the defendant and his companion, who had in their custody the remaining funds, went into a restaurant to dine, and that while they were waiting to be served, the incident we have already stated occurred. The defendant had a right to eat in the restaurant and by so doing his carrying of the weapon was not rendered unlawful. The incident which took place between the defendant and the young men, of which the former was exonerated or acquitted as he did not provoke it, did not operate to make the carrying of the weapon unlawful. The evidence showed that the defendant did not make use of his weapon and that he only made a move to pull it out upon seeing that five or six men were approaching him in a hostile attitude.

The finding made by the lower court that the defendant used the weapon and that if there was no one wounded or killed it was due to the fact that the pistol misfired, was based exclusively on the testimony of two witnesses—two of the young men who provoked the incident—who at the time of the occurrence were drunk and at the trial were interested in showing their innocence. Said testimony was overcome by that of the two policemen who arrested the defendant and took from him and examined the pistol and the bullets it contained. The bullet shells had not been punctured by the hammer of the gun. It is a matter of common knowledge, that when a pistol or a revolver is used and the weapon misfires, the bullet shell is punctured by the hammer of the gun.

The lower court committed a grave error in increasing to two months the term previously imposed on the defendant for the carrying of the weapon, if we bear in mind the use made of the weapon by the accused in order to defend himself from the young men who tried to assault him. Defendant was acquitted of the charge of aggravated assault filed against him and was and still is entitled to the protection granted to him by the judgment of acquittal. The judgment of the lower court deprived him of said protection by holding that defendant was guilty of carrying a forbidden weapon as he used it for purposes of offense and not of defense. The judgment appealed from is equivalent to a reversal of the judgment of acquittal.

The evidence for the prosecution established the fact that the pistol taken from the defendant was registered in Orsini's name. Vicente Santos, defendant's principal, testified that defendant asked Orsini to lend him the pistol for the trip to Jayuya and that Orsini lent it to him. Such testimony was corroborated by that of Torres, the other pay clerk. In any event, it was shown at the trial that the defendant held a license to carry a revolver and that it being his duty to make a trip and carry with him over three thou-

sand dollars belonging to his principal, in the presence of the latter he took a pistol from the office and carried it with him on the trip he was obliged to make. Under those circumstances, it is immaterial whether Orsini gave him the pistol or whether the defendant took it. The essential fact is that the defendant took and carried it for a specific and definite purpose, for the accomplishment of which he was authorized to carry a weapon.

The prosecuting attorney in his brief admits that "if the license obtained by the defendant to carry a revolver had not contained a limitation, as to the occasions in which said weapon was to be carried by the defendant, we would have to agree with appellant that the offense of carrying a weapon had not been committed, in spite of the fact that he was carrying a pistol and not a revolver as authorized by said license."

We agree with the prosecuting attorney that if a person is authorized to carry a revolver for a definite purpose, the mere fact that he carries a pistol instead of a revolver, does not render such carrying unlawful, provided that the defendant does not unnecessarily or without a just cause deviate from the mission entrusted to him and for which he was authorized to carry a weapon. 68 C. J., p. 28, §19 (2); *People v. Rodríguez*, 35 P.R.R. 253.

The license granted to defendant authorized him to carry a revolver "only for purposes of defense while in the discharge of the duties of his employment." He did not violate the law by the fact that he carried a pistol.

The defendant was bound to transport the money and the weapon he carried for its protection through the shortest possible way without delay or unnecessary or unjustified deviations. In 68 C. J., p. 22, §14, it is said:

". . . There should be no diversion of one's course or a turning aside, stopping by the wayside or loitering for the pursuit of pleasure

822

or other matters, nor to display or fire the weapon upon the public street, or on the premises of another person; *but a deviation or a stopping or turning aside for reasonable or necessary purposes may be permissible.*"

The purpose for which the defendant and his companion went into the Guarin Bar, that of eating, was a reasonable and necessary purpose which, in our judgment, justified their deflection or turning aside from their route before completing the mission entrusted to them. The depositing of a coin in a music box for the purpose of hearing a phonograph record while awaiting their dinner or while eating was not an unlawful act, nor one so unreasonable or unnecessary as to subject the person performing it to criminal liability. If it had not been for the aggressive intervention of the young men who were acting under the influence of the liquor consumed at that place, nothing would have happened and the mission entrusted to the defendant and his companion would have been accomplished in peace.

Both judgments appealed from must be reversed and the defendant-appellant discharged.